**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CHARLES W. TURNER, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:15CV361 |
| | ) | |
| FRANK L. PERRY, | ) | |
| | ) | |
| Respondent.[1] | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus via 28 U.S.C. § 2254. (Docket Entry 1.) For the reasons that follow, this Court should deny relief.

## I. Background

Petitioner pleaded guilty in the Superior Court of Guilford County to attempted first degree murder, second degree murder, and first degree burglary, in cases 08CRS094530, 08CRS091138, and 08CRS094533, respectively, and (as expressly agreed in connection with the plea) received concurrent prison terms of 189 to 236 months, 100 to 129 months, and 77 to 102 months, respectively. (Id., ¶¶ 1, 3-6; Docket Entry 7-2 (Transcript of Plea); Docket Entry 7-3 (Judgment and Commitment(s)).) He did not appeal (Docket Entry 1, ¶ 8), but later did file a Motion for Appropriate Relief (Docket Entry 7-4; see also Docket Entry 1, ¶ 11(b)), which the Superior Court denied (Docket Entry 7-5). Petitioner then

---

[1] Petitioner originally named the North Carolina Department of Public Safety as Respondent, but, pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, the Court ordered the substitution of Mr. Perry, the Department's Secretary. (See Docket Entry 2 at 1 n.1.)

requested certiorari review in the North Carolina Court of Appeals (Docket Entry 7-6), which that court denied (Docket Entry 1, Ex. B; see also id., ¶ 11(c)).  Next, Petitioner filed a "Motion for Release" (also entitled "Motion to Dismiss Sentence") (Docket Entry 7-8), which the Superior Court "treat[ed] as a Motion for Appropriate Relief" and denied (Docket Entry 7-9 at 2).[2]

Shortly before that denial by the Superior Court, Petitioner instituted this action by filing a form Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (which he signed under penalty of perjury).  (Docket Entry 1.) Respondent has moved for summary judgment (Docket Entry 6) and Petitioner has responded (Docket Entry 9).[3]  Petitioner also has filed an "Amendment."  (Docket Entry 11.)

## II.  Ground(s) for Relief

In the paragraph provided for "stat[ing] every ground on which [Petitioner] claim[s] that [he is] being held in violation of the Constitution, laws, or treaties of the United States" (Docket Entry 1, ¶ 12), the instant Petition states (beside the subheading "GROUND ONE"):  "See 11.c.5. (previously)" (id.).  The cross-referenced Paragraph 11(c)(5) (wherein Petitioner purports to describe the "[g]rounds raised" in his prior petition to the North Carolina Court of Appeals) in turn states (in its entirety):

---

[2] The record does not reflect that Petitioner asked the North Carolina Court of Appeals to review that order.

[3] Petitioner signed his summary judgment response under oath.  (See Docket Entry 9 at 7.)  He also filed an unsigned (but otherwise materially-identical) version of that response.  (See Docket Entry 10.)

> Ineffective Assistance of Counsel, and Failure to stop proceeding at Plea Agreement when [Petitioner] stated "Yes" to mind altering drug and his mental state at the time of plea agreement to make sure that [Petitioner] had the mind capassity [sic] to understand taking a plea when his doctor stated in the record that he was mentally retarded; or Right to Appeal; did not file Notice of Appeal. (U.S. v. Jones[,] 336 F.3d 245, 259-60 [(3d Cir. 2003)])

(Id., ¶ 11(c)(5); see also id., Ex. A ("Preliminary Findings" forwarded to Petitioner's counsel by defense-retained psychologist, James Hilkey, approximately 10 months before Petitioner's guilty plea, concluding that Petitioner "has a serious mental illness and has mental retardation," but that, "despite his intellectual and psychological handicaps, [he] does not meet the criteria for the affirmative mental health defense of insanity").)[4]

---

[4] The Petition provides no further support for any claim in "GROUND ONE" and identifies no other claims at the subheadings for "GROUND TWO," "GROUND THREE," or "GROUND FOUR." (Docket Entry 1, ¶ 12.) Petitioner's "Amendment," however, apparently purports to raise some additional claims. (See Docket Entry 11 at 1-2 ("This is information that . . . hopefully will be used in helping in solving the current case. [Petitioner] . . . ha[s] never received his Motion of Discovery before or after he asked for it in person and also he has written several times to his attorney to obtain it. . . . Permit me to further indicate that . . . [Petitioner's] attorney failed to stop proceeding after the District attorney stated to the court that she was unable to locate the witness in [Petitioner's] case, nor she had a weapon, after trying numerous times to find said witness. According to law, the defense attorney should had [sic] delay [sic] or ruled to stop proceeding after these facts, until the state have [sic] his or her witness order [sic] to appear in court, or issue [sic] a failure to appear to the witness [sic] last known address. . . . [T]he District attorney intentionally allowed the witness not to appear in court just to corroborate a conviction whether or not it was a Jury or Plea trial."), 3-4 (appearing to suggest (1) that additional investigation should have occurred regarding "whether it were [sic] dark or daylight during the accused burglary" and whether, at the time of the crimes, Petitioner "might have been under the influence of acohol [sic]," as well as (2) that the absence of certain evidence weakened the prosecution's case on the attempted first-degree murder charge).) Habeas actions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under such rules, because Petitioner filed his "Amendment" more than 21 days after Respondent answered the Petition (compare Docket Entry 5, with Docket Entry 11), he "may amend [the Petition] only with the opposing party's written consent or the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2). Petitioner neither has produced any such written consent by Respondent nor has obtained leave of the Court. (See Docket Entry 11; Docket Entries dated
(continued...)

### III. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant

---

[4](...continued)
Nov. 16, 2015, to present.) "[W]hen a habeas petitioner has not moved to amend his petition, the Court will not consider any allegations or arguments stemming from [a] new claim." White v. Keller, No. 1:10CV841, 2013 WL 791008, at *3 (M.D.N.C. Mar. 4, 2013) (unpublished) (internal quotation marks omitted)). Moreover, unlike the Petition and Petitioner's summary judgment response, his "Amendment" bears no indicia of an oath or acknowledgment of perjury penalties. (See Docket Entry 11 at 4.) Any factual assertions in the "Amendment" thus do not constitute evidence capable of supporting a claim. See, e.g., Pizzuti v. United States, Nos. 10 Civ. 199, 1003, & 2585, 02 Cr. 1237, 2014 WL 4636521, at *24 n.17 (S.D.N.Y. Sept. 16, 2014) (unpublished) ("I decline to give any weight to unsworn statements that do not comply with 28 U.S.C. § 1746."). Finally, any new claims presented in the "Amendment" are "vague, conclusory, speculative, and unsupported and fail[] for all these reasons." Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished); see also Tollett v. Henderson, 411 U.S. 258, 267-68 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . ."); United States v. Daisi, 510 F. App'x 194, 196 (3d Cir. 2013) ("[The defendant] appears to assert that he should be permitted to withdraw his plea because he was not granted any discovery before entering the guilty plea. . . . [The defendant's] knowing and voluntary plea constituted a waiver of any right he may have had to receive documents . . . ." (internal citation and quotation marks omitted)); Powell v. Shanahan, No. 3:13CV496FDW, 2014 WL 1464397, at *8 (W.D.N.C. Apr. 15, 2014) (unpublished) ("[T]o the extent [the p]etitioner bases his ineffective assistance of counsel claim on his attorney's alleged failure to investigate [various matters], [he] has presented . . . unsupported and conclusory allegations, which are insufficient to warrant either an evidentiary hearing or habeas relief." (citing Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogation on other grounds recognized, Yeatts v. Angelone, 166 F.3d 255, 266 n.4 (4th Cir. 1999))); Davis v. Clarke, No. 3:13CV119, 2014 WL 693536, at *4 (E.D. Va. Feb. 21, 2014) (unpublished) ("Where a petitioner faults counsel for not calling a witness, the petitioner must provide 'concrete evidence of what the witness would have testified to in exculpation,' so that the reviewing court can adequately assess the significance of the decision not to call the witness." (internal brackets omitted) (quoting United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004))), appeal dismissed, 577 F. App'x 157 (4th Cir. 2014); United States v. Ochsner, Crim. No. 89-220, 1992 WL 6279, at *1 (E.D. La. Jan. 6, 1992) (unpublished) ("[The petitioner] cannot, after entering a guilty plea, challenge the evidence upon which the indictment against him rested.").

habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. . . . The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) (emphasis added); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").[5]

In addition, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case

---

[5] The Court, however, may deny a claim on the merits despite a lack of exhaustion. See 28 U.S.C. § 2254(b)(2).

-5-

law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). Finally, this Court must presume state court findings of fact correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

## **IV. Discussion**

As quoted in Section II, the instant Petition seeks federal habeas relief based on the contention that Petitioner's counsel provided ineffective assistance (A) by failing to intervene during the guilty plea hearing for the purpose of ensuring that the Superior Court properly determined whether Petitioner possessed the mental capacity to enter a guilty plea (in light of (1) his reported consumption of medication that day and (2) a psychologist's prior description of Petitioner as mentally retarded) and (B) by failing to file notice of appeal. Petitioner raised the same claim(s) in his Motion for Appropriate Relief (see Docket Entry 7-4) and/or in his "Motion for Release" (also entitled "Motion to Dismiss Sentence") (see Docket Entry 7-8), both of which the Superior Court denied on the merits (see Docket Entries 7-5 and 7-9). "[B]ecause this matter comes before [this Court] pursuant to [a] § 2254 petition for habeas corpus relief, [this Court's] review focuses on the propriety of [those] [s]tate [d]ecision[s] . . . ." Baum v. Rushton, 572 F.3d 198, 209 (4th Cir. 2009). In particular, this Court "may award [Petitioner] relief only if [the] [s]tate

-6-

[d]ecision[s] . . . can be found deficient under the highly deferential standards . . . contained in § 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses, as well as in § 2254(d)(2)'s 'unreasonable determination of the facts' provision." Id.; see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (observing that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt" and holding that a "petitioner carries the burden of proof" (internal citations and quotation marks omitted)); Baum, 572 F.3d at 209 ("We emphasize 'that it is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying [Section 2254(d)(1)'s] standard of review.'" (quoting Bustos v. White, 521 F.3d 321, 325 (4th Cir. 2008))).

Petitioner has not satisfied Section 2254(d). First, he has not identified any unreasonable fact-finding (made or relied upon) by the Superior Court. (See Docket Entry 1, ¶ 11(c)(5) (incorporated by reference into ¶ 12); Docket Entry 9 at 1-7; Docket Entry 11 at 1-4.) Second, Petitioner has not established that the Superior Court contradicted or unreasonably applied any United States Supreme Court authority. (See id.)

Nor could Petitioner meet that burden, given the state of the record and the standard for ineffective assistance claims:

> In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland v. Washington, 466 U.S.

-7-

> 668, 688 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a [petitioner] to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. (internal quotation marks omitted).
>
> Similarly, in evaluating whether [a petitioner] has shown actual prejudice from any such deficient performance, it is insufficient for the [petitioner] "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694.

Fisher v. Lee, 215 F.3d 438, 446-47 (4th Cir. 2000) (internal parallel citations omitted); see also Harrington v. Richter, 562 U.S. 86, 105 (2011) ("Surmounting Strickland's high bar is never an easy task. . . . Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." (internal quotation marks omitted)); Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[W]e hold that [the Strickland] test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal."); Hill v. Lockhart, 474 U.S. 52, 59 (1985) (holding that, in the context of "challenges to guilty pleas based on ineffective assistance of counsel," a

-8-

petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

### A. Plea

Petitioner has not made (and, indeed, cannot make) the requisite showing of ineffective assistance of counsel in connection with his guilty plea. As an initial matter, Petitioner has not shown (as required by Hill) a reasonable probability that, absent any ineffective assistance of counsel, he would have opted against pleading guilty (and accepting a prison sentence of 15 3/4 to 19 2/3 years), in favor of proceeding to trial (where he faced the prospect of life imprisonment (see Docket Entry 9 at 4)); rather, the record reflects that Petitioner simply viewed these allegations as a means to somehow secure a lesser sentence (see Docket Entry 7-4, ¶ 6 (declining to seek "[d]ismissal or a new trial on all or any of [his] charges" and instead requesting "[a] new sentencing hearing" and a "[r]eduction in sentence"); Docket Entry 7-8 at 2 ("requesting the court to dismiss sentence . . . [and] to rule on an inappropriate sentence")).

The Transcript of Plea in Petitioner's case also defeats his instant ineffective assistance claim, because it establishes that:

1) Petitioner could "hear and understand" the Superior Court judge conducting the plea hearing (Docket Entry 7-2, ¶ 1);

2) Petitioner could "read and write" at a "10th Grade" level (id., ¶ 3);

-9-

3) Petitioner "underst[oo]d the nature of the charges, and . . . every element of each charge" (id., ¶ 5);

4) Petitioner and his "lawyer discussed the possible defenses" (id., ¶ 6(a));

5) Petitioner was "satisfied with [his] lawyer's legal services" (id., ¶ 6(b));

6) Petitioner understood his trial-related rights and the fact that his guilty plea surrendered those rights (id., ¶ 7);

7) Petitioner understood and agreed (a) to plead guilty to attempted first degree murder, second degree murder, and first degree burglary, (b) to receive concurrent prison sentences of 189 to 236 months, 100 to 129 months, and 77 to 102 months, respectively, and (c) to waive any right to appeal (id., ¶¶ 20-22);

8) Petitioner "enter[ed] this plea of [his] own free will, fully understanding what [he was] doing" (id., ¶ 24); and

9) Petitioner had no "questions about what ha[d] just been said to [him by the Superior Court judge] or about anything else connected to [his] case" (id., ¶ 26).

Further, at the time of his guilty plea, Petitioner swore/affirmed that he "ha[d] read or ha[d] heard all of the[ foregoing] questions and underst[ood] them. The answers shown [on the Transcript of Plea] are the ones [he] gave in open court and they are true and accurate." (Id., Acknowledgement by Defendant.) Similarly, Petitioner's attorneys "certif[ied] that the terms and conditions stated within this [T]ranscript [of Plea] . . . [we]re correct and they [we]re agreed to by [Petitioner] and [his

-10-

attorneys]." (Id., Certification by Lawyer for Defendant; see also id., Certification by Prosecutor (certifying same).) "Upon consideration of the record proper, evidence or factual presentation offered, answers of [Petitioner], statements of the lawyer[s] for [Petitioner], and statements of the prosecutor, the [Superior Court judge] f[ound] that . . . [Petitioner was] satisfied with his[] lawyer[s'] legal services; . . . competent to stand trial; . . . [and that the plea was] the informed choice of [Petitioner] and [wa]s made freely, voluntarily and understandingly." (Id., Plea Adjudication.)

"[T]he representations of [Petitioner], his lawyer[s], and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "[i]n the absence of clear and convincing evidence to the contrary, [Petitioner] must be bound by what he said at the time of the plea." Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984).

The record does not contain any evidence that would permit the Court to disregard (1) Petitioner's sworn/affirmed statements admitting his understanding of the nature and consequences of his actions, (2) the related certifications of his lawyers and the prosecutor, or (3) the Superior Court judge's findings regarding Petitioner's competence and the knowing character of his plea. To the contrary, when confronted with Petitioner's allegations

-11-

(identical to those raised in the instant Petition) that his attorneys rendered "ineffective assistance of counsel [by] fail[ing] to stop [the] proceeding [on the] [p]lea [a]ggrement [sic] when [Petitioner] stated yes to mind altering drugs and [to urge the court to inquire into] his mental state at the time of plea agreement to make sure that [he] had the mind ideation to understand taking a plea, when his doctor stated in the record that he was mentally retarded" (Docket Entry 7-8 at 2), the Superior Court judge who took Petitioner's guilty plea observed as follows:

> According to the [Transcript of Plea] . . ., the only drugs taken by [Petitioner] were prescribed medications. By [Petitioner] disclosing the fact that [he] was being prescribed these drugs while at the jail, [I] had ample opportunity to observe [his] demeanor during the hearing. . . . Based upon [my] review of the psychological evaluation and findings prepared by Dr. Hilkey, which [I] reviewed at the time of the plea hearing, as well as the questions asked of [Petitioner] at the plea hearing, [Petitioner] clearly understood the nature of the proceedings, as well as the questions propounded on the [T]ranscript of [P]lea.

(Docket Entry 7-9 at 2.)

In other words, the uncontested record reflects that, prior to accepting Petitioner's guilty plea, the Superior Court judge who presided over the plea hearing knew <u>both</u> that Petitioner reported taking prescription medication on the day of the proceeding <u>and</u> that Dr. Hilkey previously had deemed Petitioner mentally retarded. Further, the Superior Court judge took that information into account, along with Petitioner's responses during the plea hearing, in assessing his ability to understand the nature and consequences of his guilty plea. Ultimately, after evaluating those matters,

the Superior Court judge found Petitioner competent and his plea knowing and voluntary. Petitioner thus got exactly what he alleges his counsel denied him, i.e, an opportunity for the Superior Court judge to consider the medication and mental retardation issues in deciding whether to accept Petitioner's guilty plea.[6]

Under these circumstances, Petitioner cannot show that his counsel acted in a professionally unreasonable manner by refraining

---

[6] As set forth in Section II, Petitioner cited a Third Circuit opinion as support for his ineffective assistance of counsel claim. In that case, the court "conclude[d] that the Government's request for a [pre-sentencing] competency hearing, [a court-ordered] report [by a psychologist] finding 'clinically significant impairment' and only 'some ability to cooperate with attorneys in his defense,' the impact of [the defendant's] sporadic compliance with his medication on his ability to assist in his defense, and [the defendant's] violent in-court behavior, all combined to create reasonable cause to doubt [the defendant's] competence." Jones, 336 F.3d at 259. Given those facts, the Third Circuit held that the district court's "unexplained failure to hold a competency hearing after expressly agreeing to do so constituted error." Id. The material differences between the facts in Jones and the facts in Petitioner's case render Jones inapposite to the Court's analysis of Petitioner's plea-related ineffective assistance of counsel claim. For example, in Petitioner's case, the prosecution did not request a competency hearing, Dr. Hilkey's report did not state that Petitioner's mental retardation significantly impaired his ability to interact with his counsel, Petitioner never exhibited in-court behavior that raised concerns about his competence, and the Superior Court judge did not fail to hold a competency hearing after agreeing to do so. Further, Petitioner has presented no allegations (much less competent evidence) that he actually lacked the capacity to enter a knowing and voluntary guilty plea. (See Docket Entry 1, ¶ 11(c)(5) (incorporated by reference into ¶ 12), Ex. A; Docket Entry 9 at 1-7; Docket Entry 11 at 1-4.) As to the medication he took on the day of his plea hearing, Petitioner has reported only that it "made him sleepy." (Docket Entry 9 at 6.) Similarly, nothing in Dr. Hilkey's report suggests that Petitioner's intellectual limitations rendered him legally incompetent. (See Docket Entry 1, Ex. A.) Additionally, Petitioner's summary judgment response and "Amendment" both indicate that he took an active role in his defense, including by-passing his counsel and enlisting the assistance of other inmates to file pre-trial motions and to communicate with the district attorney's office about a plea offer (see Docket Entry 9 at 2-4), as well as seeking direct access to discovery materials to look for weaknesses in the prosecution case (see id. at 3; Docket Entry 11 at 1-2). In any event, as documented above, the record establishes that the Superior Court judge who conducted Petitioner's plea hearing carefully evaluated his answers to questions specifically designed to ensure the knowing and voluntary nature of the plea, with full awareness of Petitioner's consumption of prescription medicine and of Dr. Hilkey's report regarding Petitioner's mental retardation, before making an explicit determination that Petitioner possessed the capacity to intelligently plead guilty. Simply put, Petitioner's invocation of Jones does not entitle him to any relief.

-13-

from interrupting the plea hearing to highlight Petitioner's reported consumption of medication and/or Dr. Hilkey's mental retardation finding; nor can Petitioner show that any prejudice resulted from any such inaction by his counsel. As a result, Petitioner's ineffective assistance of counsel claim related to his guilty plea fails as a matter of law, even if reviewed de novo (rather than under Section 2254(d)).

### B. Appeal

Petitioner's appeal-related ineffective assistance of counsel claim also provides no basis for habeas relief. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe, 528 U.S. at 477. Petitioner, however, has not alleged (let alone produced proper evidence) that he ever specifically instructed his counsel to file a notice of appeal. (See Docket Entry 1, ¶ 11(c)(5) (incorporated by reference into ¶ 12); Docket Entry 9 at 1-7; Docket Entry 11 at 1-4.)

To the extent the Petition asserts (and the Court accepts for present purposes) that Petitioner's counsel failed to consult with Petitioner about an appeal, "the [C]ourt must in turn ask . . . whether counsel's failure to consult with [Petitioner] itself constitutes deficient performance," Roe, 528 U.S. at 478. An attorney "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that

-14-

this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. For cases involving a guilty plea, the Court further "must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

Here, Petitioner pleaded guilty, received the exact sentence for which he bargained, and expressly waived any appeal rights. (See Docket Entries 7-2, 7-3.) Accordingly, Petitioner lacked a nonfrivolous basis to appeal and his counsel lacked any reason to believe a rational defendant in Petitioner's situation would have wanted to appeal. Moreover, Petitioner has not come forward with any evidence (or even an allegation) that he ever reasonably demonstrated to his counsel any interest in appealing. (See Docket Entry 1, ¶¶ 11(c)(5) (incorporated by reference into ¶ 12), 18; Docket Entry 9 at 1-7; Docket Entry 11 at 1-4.)

In sum, Petitioner's claim that he received ineffective assistance of counsel regarding an appeal falls short whether adjudged de novo or under Section 2254(d).

-15-

Case 1:15-cv-00361-LCB-LPA   Document 12   Filed 01/11/16   Page 15 of 16

## V. Conclusion

Petitioner's federal habeas claims fail as a matter of law.[7]

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 6) be granted and that judgment be entered against Petitioner without issuance of a certificate of appealability.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

January 11, 2016

---

[7] Respondent alternatively has argued that the applicable statute of limitations and the doctrine of procedural default also foreclose relief on the Petition. (See Docket Entry 7 at 8-19.) Because the claim(s) in the Petition clearly lack merit, the Court need not address those alternative arguments.

-16-

Case 1:15-cv-00361-LCB-LPA   Document 12   Filed 01/11/16   Page 16 of 16